Thank you. Good morning, your honors. May it please the court. My name is Diana Park. I'm for the appellate Mr. Jesus Flores. I believe my time frame is 10 minutes. I was going to try to reserve two minutes for rebuttal. I'm sorry, I'm using the audio because my bandwidth at home on the internet might not be accommodating the video. But I'd like to talk about two issues. The first one is the Miranda violation. And the second one is why it was not a harmless error. And interestingly enough, this month was the Miranda warning that was created 55 years ago, June of 1966. It was created to give the police certain procedures to protect the Fifth and the Sixth Amendment. We agree with the district court's opinion in regards to finding there was a Miranda violation. In this case, I believe the Burgess case of 2010 was where we looked at the clear statement for Miranda. Here in this case, my client was actually picked up three months after the crime. He was walking home and he was picked up an outstanding warrant for traffic violation. My client was 20 years old when he was brought to county jail on Saturday night. On Monday morning to a homicide detective brought him over to a 10 by 12 room to question him. Mr. Flores at the beginning knowingly involuntarily and intelligently waived his Miranda right at the outset. Thereafter, the officer questioned Mr. Flores at some length regarding the shooting and Mr. Flores denied having any such of the incident. The interview went on for about three hours and there is a 90 page transcript of this. And around page 12 of the transcript at the beginning, there's some chit chat about why my client is there, traffic violation and whatnot. And then at some point, the officers are starting into the particular homicide case. And around around page 12, my client says, well, I'm done talking. And at that point, the officers continue questioning my client. And at some point, Mr. Flores said, I think it's on around page 18 that he wanted to go back to his cell. But the officer continues speaking and question. As a matter of fact, the officer was speaking to each other regarding arresting my client. So in this case, I do believe that on page 12, when he said I'm done talking, that was it. But eventually on page council, what do you make of the argument that that phrase I'm done talking was only in response to the specific question of who were you there with, that it questioning? Well, I believe that throughout the question throughout the first 10 pages of questioning, my client wasn't responding to well, he was just saying, No, I don't know anything. And so at this time, when he said, I'm talking, they were specifically pushing him to start telling the truth, specifically about the incident. And when it went to the incident, at that point, my client says, Well, no, I'm done talking. Counsel, would you address the harmless error analysis? The district court said, Well, there was plenty of evidence presented a trial. Besides Mr. Flores, a statement about his intent, he admitted a trial to having done the shooting. The question is whether what was his intent? Yes, Your Honor, in regards to the harmless error. In this particular case, the breath case, I guess, was used. And it's whether the properly admitted evidence would have been sufficient, or if it's whether it's whether the improper evidence had a substantial interest influence on the jury. And so we look at the state's evidence. And in this particular case, it's really narrowing down to the state's case. And then the within my client's confession was cumulative in how the DA used the improperly admitted evidence. And in this case, we do have the video that was specifically this murder occurred inside the barn, inside a barn, which was a video. But more specifically in the confession, if I can jump over to whether the confession was cumulative. I think the in this particular case, my my client is serving an confession was not cumulative versus special allegation of lying in wait, and also the robbery. So there might have been some evidence because there's a video of the shooting. But that doesn't speak to the lying in wait. And it doesn't speak to whether my my client had an intent to go rob before. But why doesn't the video speak to the the robbery special findings special circumstance and it showed apparently it showed the victim being shot, the two victims being shot, and then one of the perpetrators going through his pockets? Well, in in, in, yes, in the video, what happened is, you're correct that one victim was shot, then the other victim was shot. And then the two co defendant appear in the video. And what we see is the my client going to the first victim that was shot. And the first victim wasn't was in pain. And so there was the second shot that was done. And at that time, actually, if you look closely at the video, my client takes a step away, and then goes back in past the pocket. And then on his way out, the second victim is on the ground. And then the second co defendant is also in that area where the second victim is, and then they do tap. But, you know, the robbery really is when was there there was an intent to rob ahead of time, or if there was some force used during the taking in the robbery, there was nothing taken. And the victims were on the ground, dead one pretending to be dead. So there was no, per se, robbery, but the confession itself does talk to that. And that would basically give the jury an understanding that my client went there to rob specific. My understanding was that he denied going into rob during the confession. So doesn't it actually help your client? Well, actually, Your Honor, in looking specifically, I might have been a little error in my brief there. But if you look specifically, at page 41 of the interview, the detective says, did you go there to rob and get money? My client says, yes. So in actuality, the confession is really giving the lying in wait, it's also giving the intent to rob. So that confession kind of seals it. Earlier in the trial, there was two testimonies. There was a testimony by a close friend of Mr. Flores, which said one thing, which was that my client stated that somebody owed the co-defendant. But then there's also evidence, which was a transcript from the informant that was used. And in the informant, in that transcript, it said that my client said that he was owed money. So there's actually a conflict in the evidence stating one of the testimony was that the co-defendant was owed money. The other testimony was my client was owed money. And so you have a conflict there. But once you get the confession in, and the whole jury here is a three hour of this, specifically, like I said on that specific page, 41, when the detective said, did you go there to rob and get money? And my client says, yeah. And that kind of seals the deal. There's no more doubt there. My client confessed to it. So I think the confession itself was not cumulative, specifically for the intent to rob and specifically on the lying in wait. The counsel, if the lying in waiting special finding were to be reversed, your client would still receive life without parole, correct? Under the robbery finding. Well, and this is our argument that we believe that the confession itself proves that he went there to rob because he states that. So if it was reversed in regards to the special allegation of lying in wait, and also that he went there to rob, then it would be basically a sentence for life with possibility of parole, and he wouldn't be dying in prison. But in that confession also, during the three hour interview, there was evidence that was that led to the admission that this Marena violation, which was the confession, led to admitting some other evidence that was prejudicial to my client, which was actually the detective Clark, while he was doing this interview, ended up drawing the crime scene and putting my client in the different places where the car was, where he was, when he went to the hospital. Once this confession came in for three hours, and then the DA in his closing addresses basically the uses my client's confession, matter of fact, and specifically in the closing statement, the DA says, well, based on the evidence, it's clear what happened because we have a video and it's clear that he did it because he told us he did it in three different ways. Okay. I'm sorry, Mr. Clark, your time is up if you want to finish your statement. Okay. Yes. As this is bottom line, we believe there was a Miranda violation, and we believe that it was not harmless, especially for the special allegation. And we would ask the court, well, wait to see if I have a rebuttal here. Thank you. Mr. Means. Yes. Good morning, your honors. May it please the court, Brian Means for respondent appellee, Warren Muniz. As I did in my brief, I'd like to begin by arguing an absence of prejudice, even assuming the Miranda violation. It is important to recognize that petitioner made no prejudicial inculpatory statements during the interrogation. First, petitioner admitted to Sergeant Clark that he was a shooter, that he had confessed to his good friend, Miguel Gillian. He'd also confessed to Chino, a confidential informant who recorded the confession, which was played for the jury. Even defense counsel conceded that petitioner was a shooter. Second, petitioner admitted to Sergeant Clark that he went to the dairy to collect money, but this was also cumulative. Petitioner told Miguel Gillian and Chino the same thing, and the jury heard this evidence. Third, petitioner admitted to Sergeant Clark that he disposed of the gun in his clothing. But once again, this was cumulative. Petitioner told Miguel Gillian and Chino the same thing, and this information and evidence was conveyed to the jury. Fourth, with respect to first-degree murder and the elements of willful deliberate and premeditation, petitioner made no inculpatory statements in this regard at all. To the contrary, petitioner benefited in some ways in having the confession admitted. For example, he told Sergeant Clark that the shooting was an accident, that he was just trying to scare the victims, and that no one was supposed to get shot. Admission of the confession allowed the jury to hear these exculpatory claims that they would not have otherwise have heard. This converted to tremendous benefit to him. Fifth, petitioner made only one isolated statement during the confession regarding committing a robbery. In the course of the interrogation, Sergeant Clark got petitioner to respond affirmatively to the statement that they went to the dairy to collect money and rob. But this was an isolated statement in an approximately three-hour interrogation. Moreover, the defense called Sergeant Clark to testify at trial, but petitioner never told him that he intended to either rob or shoot anyone. And that's a 12-RT 3349-51. In any event, there was irrefutable evidence of an attempted robbery. Miguel, Gillian, and Chino provided testimony that petitioner went to the dairy to quote, collect money. And second, the manner in which petitioner collected the money leaves no doubt that petitioner's collection of money amounted to an attempted robbery. The jury watched the videotape recording showing petitioner rushing into the dairy with guns blazing. Attached to petitioner's gun is a shell catcher to collect spent shells, showing he obviously planned to fire his weapon. Petitioner's face is covered to avoid being identified. After the shooting stopped and Ivan is dead, petitioner is seen going through Ivan's pocket, presumably for money. Immediately afterwards, petitioner goes through the pockets of the second victim, Sergio, who hears one of the assailants state, this dude, he doesn't have anything. And finally, third, there's no other reasonable explanation for petitioner's actions other than the commission of an attempted robbery. Also, other than the lying in wait circumstance, the prosecutor spent very little time during summation, during discussing the confession. When speaking about the evidence, the prosecutor relied most heavily on the video of the crime, repeatedly encouraging the jurors to review carefully that piece of evidence. With respect to the lying in wait, as I've argued in my brief, this court has discretion to refuse to entertain the petition of habeas corpus, should it feel that granting the writ would not significantly alter the petitioner's position. And that is precisely the case here. Petitioner cannot benefit from habeas relief on his challenge to the lying in wait special circumstance. Each of the two special circumstance findings independently result in petitioner receiving a life without the possibility of parole sentence. If the court upholds the robbery attempted robbery special circumstance, a successful challenge to the lying in wait special circumstance would not significantly affect the position of the petitioner. Now, petitioner argues that there's no evidence presented that he intended either killing or robbery prior to entering the dairy. But this is really more the evidence argument, not a Miranda claim. In any event, as I've already stated, petitioner told others that he went to collect money. The manner in which he collected the money leaves little doubt that it was an attempted robbery. And there's no other reasonable explanation for petitioner's actions, other than to commit the robbery. What was the defense? What was the defense at trial? The defense of trial focused mostly on attacking the elements of the offensive. Okay, so there was argument that the evidence was insufficient to show lying in wait or robbery. Yes. Yeah. Essentially, it was going through each of the elements and closing argument. He went through each of the elements and tried to establish that the prosecution had failed to concede that this was a second-degree murder. The battle was fought over whether or not it was a first-degree murder. He had argued that there was not lying in wait and that there was not a robbery. Counsel, with the robbery finding, was that essentially a mandatory minimum of life in sentence? Or did the judge have some discretion to impose a lower sentence? No. Under Penal Code Section 190.217a, it provides a life without possibility of parole sentence. With no discretion to the judge, the sentencing judge? That's correct. That's my understanding of the law, Your Honor. If the court has no further questions, then I will submit it on that record. Thank you, Mr. Means. Ms. Letard, I'll give you two minutes. Thank you, Your Honor. In this particular case, if the trial counsel would have been successful in not having a three-hour confession listened to by the jury, plus a diagram of the detective brought into as an exhibit, I believe that he would have had a chance in defending the case a little bit differently. But in this case, he had no choice but to go with—I mean, when you're setting up to do a trial defense, in this case, he had to go with the fact that there was a three-hour confession that was played to the jury. We do believe here that the confession was not cumulative, especially for the special allegation, and that we do think that the DA's closing does speak and uses the fact that my client's own statement, specifically in the excerpt of a transcript that we provided the court, and I'll quote some of it. Basically, it says, my client waited for an opportunity—he waited and watched for an opportunity to act and intended and took a surprise attack. Counsel? Yes? In light of the video evidence and the testimony of the informant and the cooperator, how else could Flores have defended this case other than say, well, yeah, I did it, but I didn't mean to do it? You argue that wasn't him in the video? Well, in the video, of course, there's no audio, but in the video, actually, if you look at that video really, really closely, when my client pops into the video and he goes to the first victim on the ground and basically goes in to shoot because there's moaning and shoots him, he's in pain, he shoots him, my client actually takes a step away, and as an afterthought, goes back to Pat, the pockets, and that video— Well, I understand that, but you were arguing you would have taken a different defense approach, but for the introduction of the confession and the diagram. My question is how, what approach would you have taken if you have a video of your client doing the shooting? There was no intent to rob, there was no intent to rob, there was no forming of an intent before, and there was no robbing or taking in force. So you would have taken the same approach to defending the case regardless of the evidence of the confession and the corresponding diagram? Well, I might have been able to point a little more closely to the video, but specifically in this special allegation, I do think that the closing argument from the district attorney might have been a little different as opposed to using my client's statement you know, very specifically that he went there to rob. So I think a confession is, as a matter of fact, specifically— Counsel, your time is over if you wanted to just wrap up. Yeah, just two sentences. In the closing argument from the DA, basically he said that the defendant, he says, likewise, those recording the defense says what he says, that's physical evidence for you. And then the defendant's statement I submit to you is the second best because when a person incriminates himself, we don't typically incriminate ourselves as human beings don't incriminate ourselves. Okay, thank you, Counsel. I appreciate it. This case is submitted and we will move to the next case, which is Color Switch versus Fortify Games. Do we have Mr. Collins?
judges: Schroeder, Bumatay, Morris